UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**NANCY XU,** individually, and on
behalf of others similarly situated,

Case No.

Plaintiff,

vs.                                            Hon.

**BIG BEAVER SS #205, LLC,** a
Michigan Corporation, and
**FRANCIS ASKER a/k/a FRANK
ASKER**, an individual,

Defendants.

---

**COLLECTIVE ACTION
COMPLAINT WITH JURY DEMAND**

Plaintiff, Nancy Xu ("Plaintiff"), individually, and on behalf of others similarly situated, brings this lawsuit against Defendants Big Beaver SS #205, LLC ("Big Beaver") and Francis Asker a/k/a Frank Asker (collectively "Defendants"), for unpaid wages and seeks all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*.

**INTRODUCTION**

1.     During the past three years, Plaintiff, and other similarly situated individuals, worked as servers in Defendants' Slippery Slider restaurants.

2.     At all relevant times, Plaintiff, and other similarly situated servers, were paid by Defendants on fixed hourly wage, but also received tips from customers of the restaurant.

3.     Additionally, all of Defendants' servers performed the same day-to-day job duties, which included interacting with customers, serving them food and beverages, and cleaning.

4.     In violation of the FLSA, Defendants maintained an enterprise-wide policy of confiscating all tips received by servers from the customers of the restaurant.

5.     Considering the express language of the FLSA and the abundance of guidance from the United States Department of Labor, there is no legitimate question that Defendant knowingly and willfully violated the FLSA.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

7.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

8.     Defendants' annual sales exceed $500,000.00, and Defendants employ more than two persons, so the FLSA applies in this case on an enterprise basis.

9.     Defendants' servers engage in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

10. This Court has personal jurisdiction over Defendants because Defendants conduct business and are headquartered in this State and District, had systematic and continuous ties with this State and District, and had agents and representatives in this State and District. Thus, Defendants have sufficient minimum contacts with or otherwise purposefully avail themselves of the markets in this State and District, or otherwise have sufficient contacts with this District to justify them being fairly brought into court in this State and District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(d) because Plaintiff and Class members worked and were paid in this District and the obligations, liabilities, and breaches complained of herein arose or occurred in this District. Defendants own, operate, and/or maintain restaurants, transacts business, and employ workers in this District, or otherwise are found within this District. Defendants are within the jurisdiction of this Court for purpose of service of process.

## JOINT EMPLOYER ALLEGATIONS

12. Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d).

13. The definition of "employer" under the FLSA is not limited to the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979).

14.     Congress defined "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), describing this language as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (*quoting* 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)); *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 n.21 (1985) (same).

15.     The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961).

16.     Two or more employers may jointly employ someone for purposes of the FLSA. *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

17.     All joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a) (1981).

18.     Regulations issued by the Department of Labor give the following examples of joint employment situations:

>       (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
>       (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the

fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted).

19.     The ultimate question of whether a party is an "employer" is a legal issue. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983). The ultimate determination must be based "upon the circumstances of the whole activity." *Id*. at 1470 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947).

20.     At all relevant times, Defendants controlled the rate and method of payment for the employees (including servers); controlled and dictated their schedule and job duties; and otherwise, exercised control, input, and responsibility for the work hours and pay policies at issue in this case. Thus, all Defendants meet the test for joint employer.

21.     Furthermore, as it pertains to Defendant Asker, when confronted about the tip theft policy at issue in this case, he admitted his involvement by stating he was the owner and it was, at least in part, "his prerogative" whether the servers' tips would be confiscated and used by the business for business purposes.

22.     Whether employers, or joint employers, each Defendant is nevertheless liable for the wage violations pleaded in this Complaint. *Falk*, supra; 29 C.F.R. § 791.2(a).

23.     At all times herein mentioned, Defendants' acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

## COMMON ENTERPRISE ALLEGATIONS

24.     The FLSA provides, in relevant part, that the term, "[e]nterprise means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities whether performed in one or more establishments ...." 29 U.S.C. § 203(r).

25.     The three elements to be satisfied are: (1) related activities, (2) unified operation or common control, and (3) common business purpose. See *Brennan v. Arnheim & Neely*, 410 U.S. 512, 518, 93 S.Ct. 1138, 35 L.Ed.2d 463 (1973).

26.     The Defendants meet all three elements.

27.     Related activities are those which are "the same or similar," S. Rep. No. 145, 87th Cong., 1st Sess. 41, reprinted in 1960 U.S. Code Cong. & Ad. News 1620, or are "auxiliary or service activities." 29 C.F.R. § 779.206(a) (quoting id.). Auxiliary and service activities include generally "all activities which are necessary to the operation and maintenance of the particular business," such as warehousing, bookkeeping, or advertising. *Id.*; *see also id.* at § 779.208. When different business entities are involved, the critical inquiry is whether there is " 'operational interdependence in fact.' " *Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 (11th Cir.1984) (*quoting Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1367 (5th Cir.1973)). Entities which provide mutually supportive services to

the substantial advantage of each entity are operationally interdependent and may be treated as a single enterprise under the Act. *Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 692–93 (4th Cir.1990).

28.    In the present case, Defendants are operationally interdependent because they share ownership, management, employees, and employment policies.

29.    The Secretary's regulations define "unified operation" as "combining, uniting, or organizing [related activities'] performance so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." 29 C.F.R. § 779.217. "Control" is the power to "direct, restrict, regulate, govern, or administer the performance" of the related activities, and "common control" exists "where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together." *Id*. § 770.221.

30.    As discussed above, the Defendants maintain a unified operation with common ownership and control of each restaurant. Further, the Defendants maintain the power to direct, restrict, regulate, govern or administer the performance of all hourly servers' work activities at its restaurants. Additionally, Defendants maintain the power to hire, discipline, and fire the servers of its restaurants. Finally, as it pertains to this case, Defendants dictate the compensation policies of the servers at their restaurants.

31.    "'Common control' may exist … despite the separate management of the individual establishments." *Dole v. Bishop*, 740 F.Supp. 1221, 1225 (S.D.Miss.1990) (citing *Shultz v. Morris*, 315 F.Supp. 558, 564 (M.D.Ala.1970), *aff'd sub nom.*, *Hodgson v. Morris*, 437 F.2d 896 (5th Cir.1971)).

32.    In this action, although there may have been some separate management of the entities, much of the management was shared.

33.    Finally, obviously enough, the Defendants all share in the common business purpose of advancing and growing their restaurants.

## FACTUAL ALLEGATIONS

34.    Upon information and belief, Defendant Asker owns and operates several restaurants, including the Savvy Sliders restaurant Plaintiff worked at in Troy, Michigan. Defendant Asker's other restaurants include, but are not limited to, a Happy's Pizza and Savvy Sliders in Port Huron, Michigan.

35.    Plaintiff was a server at Defendants' Troy Savvy Sliders restaurant. Defendant Big Beaver issued Plaintiff a W2. Defendants jointly controlled all material aspects of her employment, including her compensation, hours, and job duties. Attached hereto as *Exhibit 1* is Plaintiff's consent to join form.

36.    As stated above, Plaintiff and all of Defendants other servers received an hourly wage plus tips.

37.     Defendants maintained an enterprise-wide compensation policy in which they confiscated the servers' (including Plaintiff's) tips and used them for Defendants' own business purposes or economic gain.

38.     Plaintiff complained to Defendants that the tips were the servers' property and that Defendants' tip policy was unlawful.

39.     On August 5, 2022, Plaintiff sent Defendant Asker a text message that cited 29 U.S.C. 203(m), which prohibits employers from confiscating employees' tips under any circumstances.

40.     Shortly after sending that text message, Defendants unlawfully retaliated against Plaintiff (in violation of the FLSA's anti-retaliation provisions) by terminating her employment.

41.     Again, Plaintiff confronted Defendant Asker in person at the Troy restaurant about the unlawful tip policy and the termination of her employment. In that conversation, Defendant Asker informed her that there "was nothing to discuss" and that "she no longer worked" for Defendants.

42.     When asked specifically about the tip theft, Defendant Asker told Plaintiff "that's fine … go call your lawyer if you need to."

43.     Plaintiff also asked Defendant Asker why Defendants were taking the tips from the credit card transactions and Defendant Asker replied "that's my prerogative … it's not up for discussion … you no longer work here."

44.     In retaliation for confronting Defendants about their unlawful enterprise-wide unlawful tip policy, Plaintiff's employment was terminated.

## COLLECTIVE ACTION ALLEGATIONS

45.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> All current and former hourly nonexempt servers who were employed by either Defendant at any time within three years of the filing of this complaint.

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

46.     Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiff and other similarly situated employees.

47.     Consistent with Defendants' policy and pattern or practice, Plaintiff and the other members of the FLSA Collective were unlawfully deprived of their tips by Defendants.

48.     All of the work the tips that Plaintiff and the FLSA Collective received were their property and Defendants unlawfully confiscated such tips, in violation of the FLSA.

49.     As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy

and pattern or practice includes, but is not limited to, confiscating the FLSA Collective's tips.

50.     Defendants are aware or should have been aware that federal law required them to allow the FLSA Collective to retain their tips and prohibited Defendants from confiscating the tips under any circumstances.

51.     Defendants failed to properly maintain payroll records pertaining to the FLSA Collective under the FLSA, 29 U.S.C. 211(c).

52.     Defendants' unlawful conduct was widespread, repeated, and consistent.

53.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions by the same employers; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

54.     The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issue – tip theft – does not vary substantially among the proposed FLSA Collective members.

55.     There are many similarly situated current and former employees who were underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

56.     This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. 216(b).

57.     Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## RULE 23 CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure, Rule 23(b)(3), on her own behalf and on behalf of all similarly situated current and former employees of Defendants who are or were employed at any time in the last three years. Plaintiff proposes the following class definition:

> All current and former hourly nonexempt servers who were employed by either Defendant at any time within three years of the filing of this complaint.

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend this definition if necessary.

59.     The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical.  Rule 23 Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

60.     There is a well-defined community of interests among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, whether Defendants unlawfully converted the Rule 23 Class members' tips.

61.     Plaintiff's claims are typical of those of the Rule 23 Class in that she and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Class members.

62.     Plaintiff will fully and adequately protect the interests of the Rule 23 Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of Michigan wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

63.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

64.     This case will be manageable as a Rule 23 Class action.  Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

65.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

66.     Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Michigan Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*.**
**UNLAWFUL RETENTION OF EMPLOYEES' GRATUITIES/TIPS**

67.     Plaintiff hereby incorporates all preceding paragraphs.

68.     At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

69.    At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

70.    Plaintiff was either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

71.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of 29 U.S.C. § 203(g) of the FLSA.

72.    At all times relevant to this Complaint, as stated above, Defendants were "joint employers" of Plaintiff and all similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d) and 29 C.F.R. 791.2(a).

73.    The FLSA, Section 203(m)(2)(B), provides:

**An employer may not keep tips received by its employees for any purposes**, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

29 U.S.C. § 203(m) (emphasis added).

74.    Gratuities/tips are the property of the employee, even when the employer has not taken a tip credit.

**Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA**. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

29 C.F.R. § 531.52 (emphasis added).

75.     The FLSA, Section 216(b), provides employees with a private right of

action against their employers for violating these tip-pooling laws:

> **Any employer who violates section 3(m)(2)(B) [29 USC §
> 203(m)(2)(B)] shall be liable to the employee or employees affected
> in the amount of the sum of any tip credit taken by the employer
> and all such tips unlawfully kept by the employer, and in an
> additional equal amount as liquidated damages**.

29 U.S.C. § 216(b) (emphasis added).

76.     Defendants violated the FLSA by illegally confiscating the tips

received by the servers in its restaurants.

77.     As a result, Defendants failed and/or refused to pay Plaintiff the full

compensation required by the FLSA, in violation of 29 U.S.C. § 203(m).

78.     29 U.S.C. § 211(c) provides in pertinent part:

> (c)     Records
>
> Every employer subject to any provision of this chapter or of any
> order issued under this chapter shall make, keep, and preserve
> such records of the persons employed by him and of the wages,
> hours, and other conditions and practices of employment
> maintained by him, and shall preserve such records for such
> periods of time, and shall make such reports therefrom to the
> Administrator as he shall prescribe by regulation or order as
> necessary or appropriate for the enforcement of the provisions of
> this chapter or the regulations or orders thereunder.

79.     29 C.F.R.§ 516.2(a) and 29 C.F.R.§ 516.28 further require that every

employer shall maintain and preserve payroll or other records containing, without

limitation, the total daily and weekly hours worked by each employee, the amount of tips reported to the employer, the amount of tips received by the employees, and any additions or deductions from wages paid.

80.     To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, Defendants also violated the aforementioned laws causing Plaintiff damage.

81.     Defendants knew – or acted with reckless disregard as to whether – the retention of their employees' tips would violate federal law and Defendants were on notice of the FLSA's requirements at all relevant times.  As such, Defendants' conduct constitutes a willful violation of the FLSA.

82.     Because Defendants willfully violated the FLSA, a three (3) year statute of limitations shall apply to such violation pursuant to 29 U.S.C. § 255(a).

83.     Plaintiff is therefore entitled to the full amount of their unlawfully retained tips, plus additional amounts for liquidated damages, reasonable attorneys' fees, and costs. 29 U.S.C. § 216(b).

**COUNT II**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*.**
**UNLAWFUL RETALIATION**

84.     Plaintiff hereby incorporates all preceding paragraphs.

85.     Pursuant to 29 U.S.C. § 215 (a), under the heading "Prohibited acts," the FLSA makes it unlawful "to discharge or in any other manner discriminate

against any employee because such employee has filed any complaint … related to this Act.

86.    In December 2011, the United States Department of Labor issued Fact Sheet #77A to explain that "[e]mployees are protected regardless of whether the complaint is made orally or in writing."

87.    Indeed, the Sixth Circuit has held that the Sec. 15(a) applies to the unofficial assertion of rights through complaints at work. *EEOC v. Romeo Community Schs.*, 976 F.2d 985, 989 (6th Cir. 1992). *See also*, *Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (collecting cases).

88.    Plaintiff was terminated immediately after making a complaint to Defendants about Defendants' violation of the FLSA's tip provisions.

89.    Defendant had no legitimate reason for terminating Plaintiff. Instead, her termination was retaliatory and in violation of 29 U.S.C. § 215 (a).

## COUNT III
## STATUTORY CONVERSION
## MCL 600.2919a

90.    Plaintiff hereby incorporates all preceding paragraphs.

91.    Michigan provides a statutory remedy for conversion in MCL 600.2919a.

92.    The remedies available under Michigan's conversion statute exceed those available under the FLSA in that a plaintiff may "recover 3 times the amount of actual damages sustained." MCL 600.2919a (1).

93.     Further, the statute expressly states that "[t]he remedy provision by this section is in addition to any other right or remedy the person may have at law or otherwise."

94.     Michigan's conversion statute makes unlawful the "stealing or embezzling of [another's] property or converting [another's] property to the other person's own use."  MCL 600.2919a (1)(a).

95.     The tips Plaintiff and the Rule 23 Class received were their property.

96.     Defendants converted Plaintiff and the Rule 23 Class's property by confiscating it and then using it to purchase items for the advancement and maintenance of Defendants' business.

97.     The property converted by Defendants (the tips) is easily identifiably through Defendants food sales records and credit card transaction receipts.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a.     An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.     An Order certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's conversion claim (Count III);

c.     An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice

in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. An Order designating the Plaintiff as representative of the FLSA Collective and the Rule 23 Michigan Class, and undersigned counsel as Class counsel for the same;

e. An Order declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. An Order declaring Defendants unlawfully retaliated against Plaintiff in terminating her employment, in violation of the FLSA;

g. An Order declaring Defendants' violations of the FLSA were willful;

h. An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective and the Rule 23 Class the full amount of damages and liquidated damages available by law;

i. An Order awarding treble damages, pursuant to MCL 600.2919a;

j. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

k. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

l. An Order awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiff, Nancy Xu, individually, and on behalf of others similarly situated, hereby requests a trial by jury.

Dated: September 8, 2022      Respectfully Submitted,

**STERLING ATTORNEYS AT LAW, P.C.**

*s/ Gerald D. Wahl*
Gerald D. Wahl (P26511)
33 Bloomfield Hills Pkwy, Ste. 205
Bloomfield Hills, MI 48304-2913
Phone: 248-633-8916
gwahl@sterlingattorneys.com

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877)
402 W. Liberty St.
Ann Arbor, MI 48178
Phone: 734-234-5583
cash@nationalwagelaw.com